GRANVILLE P. AIKMAN v. WILLIAM C. EDWARDS, *as
Secretary of State.*

1. JUDICIAL DISTRICTS, *Legislature may Abolish.* The legislature
   of this state has the power under the constitution to transfer all
   of the counties comprising a judicial district into another, and
   thereby to abolish such district before the expiration of the term
   of office of the judge of the district so abolished.

2. TITLE OF ACT, *Accords with Constitution.* Chapter 106 of the
   Laws of 1895, entitled "An act relating to judicial districts,
   defining the boundaries of the fifth, eighth, ninth, thirteenth,
   nineteenth, twenty-fourth, thirty-first and thirty-second judi-
   cial districts, and providing for holding terms of court therein,
   and defining certain duties of the trial court in the nineteenth
   judicial district, and repealing all acts and parts of acts in con-
   flict with this act," does not violate § 16 of article 2 of the con-
   stitution. It does not include more than one subject; the title
   expresses the subject of the act, and it does not amend sections of
   prior acts not contained in the new act.

3. JUDICIAL DISTRICT, *Wiped Out by Sufficient Vote.* A two-
   thirds vote of the members of each house of the legislature is not
   required on the passage of an act to abolish a judicial district.
   The vote of a constitutional majority is sufficient.

4. ACT—*Passage and Approval.* A failure on the part of the pre-
   siding officer to sign a bill within two days after its passage does
   not defeat the act, nor in any manner impair its validity, if it be
   thereafter duly authenticated and approved by the governor.

*Original Proceeding in Mandamus.*

ORIGINAL application, on September 19, 1895, by *Granville P. Aikman,* for a writ of *mandamus* to *William C. Edwards,* as secretary of state. The facts fully appear in the opinion herein, filed November 9, 1895. .

*G. P. Aikman,* and *D. M. Valentine,* for plaintiff.

*F. B. Dawes,* attorney general, for defendant.

The opinion of the court was delivered by

ALLEN, J. : It is alleged in the alternative writ of *mandamus* issued in this case that the plaintiff was, on the 17th day of September, 1895. duly and legally nominated to the office of district judge by the republican judicial convention, held at the city of El Dorado in Butler county, for the twenty-sixth judicial district, including the counties of Butler and Greenwood ; that a certificate of such nomination in due form was signed by the chairman and secretary of said convention, and presented to the defendant secretary of state, with the request that he file the same ; that the defendant refused to comply with this request, on the ground that Butler and Greenwood counties were by act of the last legislature transferred to the thirteenth judicial district. The writ commands the secretary of state to file the certificate of nomination, or show cause. The attorney general appears on behalf of the defendant, and moves to quash the writ because it does not state a cause of action against the defendant.

Chapter 106 of the Laws of 1895, entitled "An act relating to judicial districts, defining the boundaries of the fifth, eighth, ninth, thirteenth, nineteenth, twenty-fourth, thirty-first and thirty-second judicial districts, and providing for holding terms of court

Opinion of the Court.

therein, and defining certain duties of the trial court in the nineteenth judicial district, and repealing all acts and parts of acts in conflict with this act," provides in § 7 that "the counties of Chautauqua, Elk, Greenwood and Butler shall constitute the thirteenth judicial district." Prior to the passage of this act, the twenty-sixth judicial district included only the counties of Butler and Greenwood, and by transferring these to the thirteenth district the twenty-sixth is abolished, because it is left without territory. By changes in the boundaries of other districts the twenty-fifth, twenty-seventh and twenty-eighth districts are also abolished. Chapter 99 of the Laws of 1895 abolishes the fourteenth district in the same manner, and at the same session of the legislature the Shawnee county circuit court was also abolished.

I. The validity of chapter 106 is challenged by the plaintiff on various grounds : First, it is contended with great earnestness that the office of judge of the district court is a constitutional office, which it is beyond the power of the legislature to abolish ; that this act by its terms takes effect on the 15th day of October, 1895, while the term of office of the Hon. C. W. Shinn, the present judge of the twenty-sixth judicial district, will not expire until the second Monday in January, 1896 ; that the constitution protects the district judge in his office for the full term of four years, and that the legislature cannot directly abridge his term, nor indirectly accomplish the same result by destroying his district. It is contended that the judicial department is co-ordinate with and independent of the legislative, and that if the right of the legislature to destroy a judicial district and thereby legislate a judge out of office is recognized, the independence of the judiciary is destroyed, and the legislative will becomes dominant

48—55 KAS.

over the judicial department of the government. In support of this contention it must be conceded that cases closely in point, decided by eminent courts, are cited. Among the strongest may be mentioned *Commonwealth v. Gamble*, 62 Pa. St. 343 ; *The State v. Friedley*, 34 N. E. (Ind.) 872 ; *The People v. Dubois*, 23 Ill. 445 ; and *The State, ex rel., v. Messmore*, 14 Wis. 163. We have carefully weighed and considered these authorities, and recognize their full force. While the reasoning of the courts in these cases is applicable to the one now under consideration, we may remark that in each of the cases mentioned the court had under consideration an act of the legislature which would deprive a single judge only of his office, if valid. In this case the legislature had under consideration the rearrangement of the judicial districts covering a large part of the state. Notwithstanding our great respect for the tribunals by which these cases were decided, and the force of the reasoning by which their decisions are supported, we are constrained to give a different construction to the provisions of our own constitution. The provisions in article 3 of that instrument, so far as they affect the matter under consideration, are as follows :

"Section 1. The judicial power of this state shall be vested in a supreme court, district courts, probate courts, justices of the peace, and such other courts, inferior to the supreme court, as may be provided by law ; and all courts of record shall have a seal to be used in the authentication of all process."

"Sec. 5. The state shall be divided into five judicial districts, in each of which there shall be elected by the electors thereof a district judge, who shall hold his office for the term of four years. District courts shall be held at such times and places as may be provided by law.

"Sec. 6. The district courts shall have such juris-

diction in their respective districts as may be provided by law.

"SEC. 7.  There shall be elected in each organized county a clerk of the district court, who shall hold his office two years, and whose duties shall be prescribed by law.

"SEC. 8.  There shall be a probate court in each county, which shall be a court of record, and have such probate jurisdiction and care of estates of deceased persons, minors, and persons of unsound minds, as may be prescribed by law, and shall have jurisdiction in cases of *habeas corpus.*  This court shall consist of one judge, who shall be elected by the qualified voters of the county, and hold his office two years. He shall be his own clerk, and shall hold court at such times, and receive for compensation such fees as may be prescribed by law.

"SEC. 9.  Two justices of the peace shall be elected in each township, whose term of office shall be two years, and whose powers and duties shall be prescribed by law.  The number of justices of the peace may be increased in any township by law."

"SEC. 14.  Provision may be made by law for the increase of the number of judicial districts whenever two-thirds of the members of each house shall concur. Such districts shall be formed of compact territory and bounded by county lines, and such increase shall not vacate the office of any judge.

"SEC. 15.  Justices of the supreme court and judges of the district courts may be removed from office by resolution of both houses, if two-thirds of the members of each house concur.  But no such removal shall be made except upon complaint, the substance of which shall be entered upon the journal, nor until the party charged shall have had notice and opportunity to be heard."

The legislature of 1887 created the twenty-fifth, twenty-sixth, twenty-seventh, twenty-eighth and twenty-ninth judicial districts, and the legislature of 1889 created the thirtieth, thirty-first, thirty-second,

thirty-third, thirty-fourth and thirty-fifth districts. The acts creating these districts were passed at a time when the development of the resources of the state and the increase in its population were expected to continue with the same rapidity as in the preceding years. Subsequent events have shown that this increase was extravagant and unnecessary, and there came an exceptionally strong demand from the people that some of these needless offices be abolished. The act of the legislature of 1895, now under consideration, was passed in compliance with this demand. The question we now have to consider is, whether this purpose has been accomplished without any violation of constitutional restrictions. The argument on behalf of the plaintiff, and the reasoning of the courts in the authorities sustaining his contention, may, perhaps, be divided into two main propositions : One, that it was the general purpose of the framers of the constitution to protect the judicial department from legislative interference ; the other, that they intended to insure to the judge a tenure of office for the full term for which he was elected. The one being necessary for the preservation of the independence and integrity of the judicial branch of the government in the administration of justice between litigants, and the other to preserve the individual right of the judge to his office. That the constitution intends to secure the judiciary as an independent co-ordinate branch of the government is conceded on all hands, and that the district courts are an important part of the judicial system is beyond question. It is contended that because the constitution provides for district courts and fixes the term of the judges and prescribes the mode of their removal from office, their position is fixed, and is as safe from

legislative interference as that of the justices of this court; that both are constitutional officers in exactly the same sense and to exactly the same extent; but it will be noticed that, under the provisions of the constitution above quoted, the judicial power is vested not merely in supreme and district courts, but in probate courts, justices of the peace, and such other courts, inferior to the supreme court, as the legislature may see fit to create. Probate judges and justices of the peace are constitutional officers, whose terms are fixed at two years by that instrument. The only provision of the constitution which can be construed as giving superior protection to district judges over probate judges and justices of the peace is that providing for the removal from office of justices of the supreme court and judges of the district courts. The number of the justices of the supreme court, as well as the duration of their terms of office, is definitely fixed by the terms of the constitution. Their original jurisdiction is fixed by the constitution itself, and is coextensive with the state. Their appellate jurisdiction alone is subject to legislative discretion. The case of district judges and justices of the peace is different in this important particular, that the number of judicial districts, and therefore the number of district judges, as well as the number of counties and townships, and of probate judges and justices of the peace, depend on legislative discretion. The constitution requires a probate judge in each county, but leaves the number of counties into which the state shall be divided to be determined by the legislature, with the single restriction that no county shall include an area of less than 432 square miles. It provides that two justices of the peace shall be elected in each township, but leaves the establishment of town-

ships entirely to the legislature. If the contention of the plaintiff is sound, it follows as a logical sequence that the legislature cannot abolish a township or county at a time when it will have the effect to shorten the term of office of a justice of the peace, a probate judge, or, indeed, a clerk of the district court.

We think prior decisions of this court have construed our constitution and announced the principles decisive of this case. In the case of *Division of Howard County*, 15 Kas. 194, it was held that "the legislature has the power to abolish counties and county organizations whenever it becomes necessary for them to do so in changing county lines or in creating new counties." *In re Hinkle*, 31 Kas. 712, decides: "The legislature has the power to abolish or destroy a municipal township; and when the township is abolished or destroyed, the township officers must go with it." The doctrine of this case is reaffirmed in *In re Wood*, 34 Kas. 645. In the case of *The State, ex rel., v. Hamilton*, 40 Kas. 323, it was said: "There is no constitutional restriction upon the power of the legislature to abolish municipal and county organizations, and the existence of the power is not disputed and cannot be doubted."

The constitution provides for five judicial districts. It is clear that the legislature cannot reduce the number of districts below five. Section 14, above quoted, provides for an increase of the number, and the concluding sentence of the section is, "and such increase shall not vacate the office of any judge." It is argued that the word "increase" should be interpreted to include alteration or diminution, and that the real intent of the framers of the constitution was to absolutely protect every district judge against the abolition of his office by the legislature. If so, the framers of

the constitution were singularly careless in their selection of words. This we cannot assume without most cogent reasons. If it had been intended to prohibit the vacation of the office of a judge by the abolition of his district, it would have required but very few words to say so. To vacate the office of a district judge already elected by the people and serving, by an act increasing the number of judges would clearly be, in effect, the removal of a judge from office when his office was not destroyed. To allow the legislature, while making one new district, to legislate the judge of an old district out of office and provide for the appointment or election of two new judges, would clearly be vicious in principle, and this is the class of legislation which falls within the constitutional inhibition. But to prohibit the legislature from abolishing a district which had been improvidently estabished, and thereby vacate the office of a judge, is another and altogether different thing, which the constitution does not in express terms prohibit. While the independence and integrity of courts in the exercise of all the powers confided in them by the constitution should be firmly maintained, jealousy of encroachments on judicial power must not blind us to the just power of the legislature in determining within constitutional limits the number of courts required by the public exigencies, and the kind and extent of the jurisdiction and functions to be discharged by each. We think the legislature has the power to abolish as well as to create, to diminish as well as to increase, the number of judicial districts. We might say, in this connection, that the plaintiff in this case does not claim any vested right in an office, and that no question is presented by the record before us as to the right of the legislature to deprive a district judge of the compen-

sation allowed him by law.    In the act under consideration the legislature has seen fit to provide that the act shall not be construed to deprive any judge of his salary for the full term for which he was elected. The claim of the plaintiff in this case rests on the broad proposition that the act in its entirety is void. The conclusion we have reached is not wholly without support from authorities in other states. (*Board of Supervisors v. Mattox*, 30 Ark. 566 ; *Halsey v. Gaines*, 2 Lea [Tenn.], 316 ; *Crozier v. Lyons*, 72 Iowa, 401.)

If the contention that a judge, when once elected, is entitled not only to the emoluments of his office, but to exercise the functions of his office in the territory for which he was elected, be sound, does his right extend over the whole district, or only over a part of it, and can there be a sound distinction between the right to take away a part of his district and the right to take away the whole?    It has never been contended, so far as we are aware, that the legislature is without power to change the boundaries of judicial districts by detaching counties from one and adding them to another ; nor has it been doubted that the legislature might do this during the continuance in office of any judge.    That this has the effect of placing the people of the county so transferred from one district to another away from the jurisdiction of a judge in whose selection they have taken part, and under the jurisdiction of another judge in whose election they have had no voice, is clear.    The great fallacy, as we view the case, in the argument in favor of the plaintiff and in the cases cited by him, is that the rights of the particular individual who chances to be elected judge are looked upon as paramount and superior to the rights of the public.    The correct view is that a public officer, no matter what the depart-

ment of the government in which he serves, is a
public servant. A district judge is provided to aid
in the administration of the laws. While it is
right that the public should deal justly with him,
his individual rights are by no means of primary
importance. The most substantial objection that can
be urged against such a transfer as is made by this
act is that the people are placed in a district under a
judge in whose selection they have had no voice, and
who might not have been chosen if all the people in
the enlarged district had been permitted to vote at
the time of his election. The reasons apply against
the transfer of one county with just the same force as
against the transfer of all the counties included with-
in a district. Acts of the legislature transferring a
county from one district to another have very fre-
quently been passed during the history of the state,
and their validity has never been questioned. The
only ground on which it can be urged that the legis-
lature might transfer Greenwood county into the thir-
teenth district, but not Butler, is that the judge of the
twenty-sixth district resides in Butler county. This
ground is purely personal to the judge. It has no
weight whatever affecting the interests of the public.

We need not discuss the question argued at some
length in the brief whether there can be a judge with-
out a district, or without a court over which to pre-
side, as the plaintiff in this case has no interest in
that question ; nor shall we attempt to answer the
list of questions asked under this head in the brief.
It is sufficient for us to say that the legislature had
power to transfer Greenwood and Butler counties into
the thirteenth judicial district in the manner provided
in the act under consideration.

II. It appears that on the final passage of the act

two-thirds of the senators voted for it; that in the house it received 83 votes, being one short of two-thirds of the members. It is contended that the constitution requires the concurrence of two-thirds of the members of each house to increase the number of judicial districts, and that there is an implied inhibition on the reduction of the number of districts without the concurrence of an equal number. The general rule is, that laws may be enacted by the vote of a majority of all the members elected to each house. The concurrence of a larger number is only required in cases mentioned in the constitution itself. It is not apparent that the same reasons exist for a two-thirds majority in order to abolish a judicial district, or to change its boundaries, that do for creating one. One of the worst tendencies to be provided against in our system of government is that of constantly creating new offices to be filled, and increasing the salaries of old ones. Those desiring lucrative positions, or public favors of any kind, are constantly pressing their claims on the members of the law-making body, and it was thought wise to require the concurrence of two-thirds of the members of each house as a safeguard against this tendency. Anyone who has observed the obstacles which are invariably thrown in the way of every attempt at the abolition of an office, or reduction of a salary, or the taking away of a special privilege, must be fully aware that no necessity exists for unusual constitutional restrictions on the power to reduce the number of officers, or deprive any person of a salary, or a privilege held to the detriment of the public. When the people are not vigilant, their rights are often easily lost, and regained only with utmost labor.

"   .   .   .   *Facilis descensus Averno;*
*Noctes atque dies patet atri janua Ditis;*
*Sed revocare gradum, superasque evadere ad auras,*
*Hoc opus, hic labor est.*" *

III. It is urged that the act is void, because it vio-
lates § 16 of article 2 of the constitution; that the
title is defective, because it does not clearly express
the purpose of the act, does not mention the judicial
districts abolished, and includes more than one sub-
ject. The first part of the title, "An act relating
to judicial districts," is very broad and comprehen-
sive. Whatever changes are made by the act are
effected by so extending the boundaries of the dis-
tricts named as to include within them the territory
of the old twenty-fifth, twenty-sixth and twenty-
eighth districts. There is no abolition of these dis-
tricts by express words, but any person reading the
title of the act would be informed that changes of
boundaries were made, and of course a change in
the boundary of one district could not be effected
without also changing the boundary of another. The
contention that, because a clause is inserted in the
act making it " the duty of the trial court of the nine-
teenth judicial district, in assigning the docket, so to
group cases arising in Arkansas City and cases con-
trolled by Arkansas City attorneys so they can on
motion be tried in succession," it contains more than
one subject, is not good. While this matter is, per-
haps, a little remote from the general purpose of the
act, it still is connected with judicial districts. This
is not a matter of very great importance, and to hold

---

* NOTE.—Virgil, (Æneid, liber vi, 126–129,) which Dryden freely
Englishes thus:

    Smooth the descent and easy is the way;
    (The Gates of Hell stand open night and day):
    But to return, and view the cheerful skies,
    In this the task and mighty labour lies.

this whole act void on this ground would seem extremely technical and hypercritical. Nor do we think that greater force should be given to the objection to the last clause of § 4, relating to summoning juries in Dickinson and Morris counties. All these matters relate to judicial districts. It is contended that the construction we have given to the act under consideration makes it amendatory legislation, and therefore void, within the rule followed in *The State v. Guiney*, ante, page 532 (40 Pac. Rep. 926). Every act changing the law is not necessarily amendatory because previous legislation existed on the same subject. An amendment, properly, is a correction of one or more existing defects. It looks to particulars, without disturbing the general framework of the law. But where the legislature has under consideration not merely minor particulars, but the whole subject-matter of the law, it may wholly annul all former legislation on the subject, and pass an act covering the entire field without specifically naming, or attempting to amend, particular provisions in prior statutes. The new act then becomes a substitute for all former legislation on the subject, and may repeal either in express terms, or by necessary implication, all former sections of the law inconsistent with the new enactment. Were we to hold the act under consideration amendatory of former statutes, and void because the sections amended are not contained in the new act, and apply the same rule to former statutes, it is very difficult to tell in what judicial districts the various counties named in the act would be found. By referring to chapter 147 of the Laws of 1887, by which the twenty-sixth judicial district was created, we find that it does not in terms amend any former law, nor contain even a general repealing clause. It merely

creates judicial districts and fixes the terms of court
therein, the twenty-sixth district being composed of
the counties of Butler and Greenwood. Prior to the
passage of that act Butler county was in the eighteenth
district, created by chapter 102 of the Laws of 1883,
and Greenwood county was in the fifth. Prior to
that time Butler county had been in the thirteenth
district, created by chapter 112 of the Laws of 1872,
and prior to that time in the ninth. Greenwood
county was attached for judicial purposes to Woodson
county, which was included in the fifth district in
1861. None of the acts creating the various judicial
districts in which Butler county has been included
have ever complied with the constitutional require-
ments of an amendatory statute, and if the act under
consideration is void for that reason, the act creating
the twenty-sixth judicial district is void also, and no
twenty-sixth district has ever existed. It is clear that
the statute is not void for this reason.

IV. A final objection is that the act was not signed
by the presiding officers of the respective houses with-
in two days after its passage, as required by § 14 of
article 2 of the constitution. If the contention of the
plaintiff is sound, then a veto power rests in the pre-
siding officers of the two houses, which has remained
undiscovered from the organization of the state gov-
ernment to this time. It would undoubtedly be a
very great surprise to the general public if it were to
be declared by this court that the lieutenant-governor
and the speaker of the house, by merely delaying for
more than two days to attach their signatures to it,
could effectually kill a law duly passed by the senate
and house. In the case of *Comm'rs of Leavenworth Co.
v. Higginbotham*, 17 Kas. 62, it was held that the fail-
ure of the presiding officer of the senate to sign a bill

did not invalidate the law, and that the act then under consideration was a law, although never authenticated as such by him.

The motion to quash the writ is sustained.

All the Justices concurring.