338 S.E.2d 370

**STATE of West Virginia**

v.

**Butch Weldon BLACK. (Two Cases)**

No. 16528.

Supreme Court of Appeals of West Virginia.

Dec. 12, 1985.

Bethany Boyd, Asst. Atty. Gen., Charleston, for State.

Henderson & Henderson, Herbert H. Henderson, Huntington, for Black.

PER CURIAM:

Butch Weldon Black, the defendant in this proceeding, was convicted of kidnapping and aggravated robbery in two separate trials conducted in the Circuit Court of Cabell County. Both charges grew out of one series of transactions, and for the purposes of appeal the cases have been consolidated.

On appeal the defendant makes three assignments or error: (1) that the trial court erred in admitting into evidence testimony relating to two safe boxes seen in the defendant's car by a police officer; (2) that the trial court erred in allowing the introduction of an extra-judicial statement made by the defendant; and (3) that the sentence imposed upon the defendant was disproportionate to the crimes committed. After reviewing the record, the Court is of the opinion that the trial judge committed no reversible error. Accordingly, the judgment of the Circuit Court of Cabell County is affirmed.

At approximately 3:30 a.m. on May 23, 1980, two men entered the Holiday Inn in Huntington, West Virginia. They loitered around the lobby for some time, and then one of them stepped behind the desk with his right hand in his pocket, indicated that he had a pistol, and stated to the employees on duty that he wanted money from the safe and cash register. The employees followed the robber's instructions and carried two metal safe boxes to a car parked outside. The robber who had demanded the money instructed two employees to get into the car. One of the employees, as he was entering the car, mentally recorded its license number.

The two employees were released in a park at approximately 4:45 a.m. and informed that there were snipers concealed in the vicinity who would shoot them if they attempted to leave before eight minutes had passed. At that time the second employee also noticed the license plate of the car. Approximately ten minutes later the two employees waved down a police cruiser driven by Police Officer Brooks and gave him an account of the robbery, including the license number of the vehicle involved.

At 4:53 a.m. another police officer, Officer Byard, who had not yet received information regarding the robbery, observed the defendant driving in an odd manner. Officer Byard stopped the car and gave the defendant, who was driving the car, a field sobriety test. The defendant passed the test, and the officer permitted the defendant to leave after he indicated that he was going to Richard Dean's house. The officer noted the license number of the car and that Dean was a passenger in it. He also noted that there were two gray metal boxes in the rear seat of the car.

Shortly after allowing the defendant to drive away, Officer Byard heard an account of the robbery. He reported that he had stopped the car and that the individuals in it had indicated that they were going to Richard Dean's house. A search warrant was subsequently obtained authorizing the search of Richard Dean's house. Officers then proceeded to the house where they located and seized the metal safe boxes taken from the Holiday Inn.

The defendant and Richard Dean were later arrested and indicted for kidnapping and aggravated robbery.

On April 22, 1981, while awaiting trial, the defendant approached the prosecuting attorney of Cabell County at "Snak's Fifth Avenue", a restaurant located in Huntington. The defendant offered to buy the prosecuting attorney a beer. The prosecutor refused the offer. An investigator who worked for the prosecuting attorney's office and the prosecutor then joined others at a table in the restaurant. The defendant again approached the prosecuting attorney and asked to discuss his case. The prosecutor replied that he would only speak to the defendant through his attorney. Then, according to both the prosecutor and the investigator, the defendant spontaneously stated: "Look, John, I knew what I was doing when I was in there with Dean. But I was really kidding around. I wasn't going to hurt anybody. Of course, this is all allegedly what happened." The investigator took notes throughout the conversation and transcribed them afterwards.

Also while trial was pending defense counsel moved that the evidence seized at Richard Dean's house under the search warrant be suppressed on the ground that there was inadequate probable cause for issuance of the warrant. The court, after conducting a hearing, ordered suppression of the evidence.

During trial the trial court allowed the State to elicit testimony from Officer Byard, who had stopped the defendant's car on the night of the robbery, that he had seen the two cash boxes in the back of the car when he had stopped the defendant for the field sobriety test. Defense counsel objected to this testimony on the ground that the boxes themselves had been suppressed. The trial judge also allowed the State to introduce into evidence the statement which the defendant had made at the Snak's Fifth Avenue restaurant prior to trial.

Two of the defendant's assignments of error in this proceeding are that the trial court erred in admitting Officer Byard's testimony that he had seen the cash boxes in the rear seat of the car driven by the defendant, and that the trial court erred in admitting into evidence his extra-judicial statement made at the Snak's Fifth Avenue restaurant.

The defendant argues that the cash boxes, which were seized under an illegal warrant, were. suppressed as evidence by the trial court, and that because the actual introduction of the cash boxes was prohibited, the testimony of Officer Byard that he had seen the cash boxes should also have been suppressed. Essentially, the defendant argues that the evidence relating to

the cash boxes was fruit of a poisonous tree and as such it was inadmissible. We find the defendant's contention to be without merit.

As we explained in *State v. Aldridge*, 172 W.Va. 218, 304 S.E.2d 671 (1983), the fruit of the poisonous tree doctrine has no application where the government learns about evidence from a source independent of an illegal search or seizure. *See also, Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920). In syllabus point 4 of *State v. Aldridge, supra*, we specifically held: "The exclusionary rule has no application when the state learns from from an independent source about the evidence sought to be suppressed." The independent source doctrine was also recognized in *State v. Peacher*, 167 W.Va. 540, 280 S.E.2d 559 (1981).

■ In the case presently before the Court, it is clear that Officer Byard, who stopped the defendant for a field sobriety test, had no notice that a robbery had been committed and that his view of the safe boxes was a result, not of any search, but of a chance glance through the window of the car incidental to his stop of the defendant. No search warrant was issued for the seizure of the safe boxes until sometime after Officer Byard stopped the defendant for the sobriety test, and the boxes themselves were not seized until considerably later. Officer Byard's testimony indicated that he obtained his only information relating to the boxes from a source entirely independent of the illegal seizure of the boxes.

■ We also find that the defendant's contention regarding the statement which he made to the prosecuting attorney at the Snak's Fifth Avenue restaurant is without merit. At the time of the making of the statement, the defendant was not in custody or being subjected to in custodial interrogation. He approached the prosecuting attorney and spontaneously spoke. The evidence indicates that the prosecuting attorney discouraged the defendant from speaking and indicated that he could not discuss the matter. The defendant, however, persisted. There is no indication that the prosecuting attorney made any inducement whatsoever to the defendant in exchange for the remarks.

In *State v. Cooper*, 172 W.Va. 266, 269, 304 S.E.2d 851, 853 (1983), the Court stated:

"A confession of the accused is admissible in evidence where it appears that it was made to the prosecuting attorney and sheriff without any inducement of a worldly or temporal character in the nature of a threat, promise or benefit held out to him by them in respect to his escape from, or mitigation of, his punishment...." Syllabus, *State v. Goldizen*, 93 W.Va. 328, 116 S.E. 687 (1923).

The defendant's final assertion is that the trial court imposed an improper sentence upon him by sentencing him to twenty years in the State Penitentiary on the kidnapping charge and fifteen years in the State Penitentiary on the aggravated robbery charge, with the additional provision that the two charges run consecutively. In his petition the defendant alleges that his co-defendant, Richard Dean, received the same sentences with the proviso, however, that they were to run concurrently. In his brief counsel for the defendant states that the co-defendant actually received sentences that were to run consecutively.

In syllabus point 8 of *State v. Vance*, 164 W.Va. 216, 262 S.E.2d 423 (1980), the Court recognized that sentences imposed for crimes should be proportioned to the character and degree of the offense:

Article III, Section 5 of the West Virginia Constitution, which contains the cruel and unusual punishment counterpart to the Eighth Amendment of the United States Constitution, has an express statement of the proportionality principle: "Penalties shall be proportioned to the character and degree of the offense."

In the later cases of *State v. Cooper*, 172 W.Va. 266, 304 S.E.2d 851 (1983), and *State v. Buck*, 173 W.Va. 243, 314 S.E.2d 406 (1984), the Court discussed the factors which should be considered in determining

whether a particular sentence is appropriate. The later cases indicated that the basic questions are the extent of the defendant's involvement in the crime, including the question of who was the prime mover, the defendant's prior criminal record, his rehabilitative potential, including post-arrest conduct, his age and his maturity, the presence or absence of remorse on the defendant's part, and the question of whether or not co-defendants received disparate sentences, if there were co-defendants.

In considering the sentence to be imposed upon the defendant, the trial court considered each of the factors set forth in *State v. Cooper* and *State v. Buck* as those factors related to the defendant's case. The court specifically found that the defendant was actively involved in the commission of the crimes charged. The court noted that the defendant drove the get-away and kidnapping car and also noted that the robbery was a planned affair. The court was unable to state who was the prime mover of the crime, but did indicate that there was a possibility that the defendant had been the leader in it. The court looked at the defendant's prior criminal record and noted that in 1979 he had plead guilty to a crime and been sent to the Forestry Camp for youthful offenders. The personnel at the camp, according to the trial judge, "couldn't do anything with you and wanted you transferred out ..." At that time there were about thirty bad check charges pending against the defendant. The court also noted that the defendant had been charged with fifty-two misdemeanors, that he had received twelve misdemeanor convictions, that five felony charges had been lodged against him, including one that was still pending, and that there were reports indicating that the defendant had been involved in attempted break-outs from jail. On the question of rehabilitative potential, the court found that the defendant was not a candidate for probation because of past drug abuse and alcoholism. Also, the court noted that the defendant's psychiatric report indicated that he was egocentric, impulsive, and that he "believes his needs and desires are the most important in the universe." On the question of remorse, the court stated "... [Y]ou don't have any conscience. I feel that you are still not even sorry for things you did ... [Y]ou have never shown any real remorse for the things you have done." The court also considered the fact that the crimes involved were crimes of violence or crimes involving threats of violence.

It appears that the sentences imposed upon the defendant were identical to the sentences imposed upon the co-defendant, Richard Dean. In sentencing the defendant, the court looked at and considered the factors stated by this Court as relevant in determining whether a particular sentence is proportionate. The sentence imposed upon the defendant for kidnapping was the minimum permissible under the law where kidnapping is by force and the person kidnapped is returned alive without bodily harms. *See W. Va. Code*, 61–2–14a. The sentence imposed for the robbery was well within the parameters established for robbery by threat set forth in *W. Va. Code*, 61–2–12, which provides that under the circumstances similar to those of the present case the convicted person shall be confined in the penitentiary for, at the very least, ten years. Where a person has been convicted of two or more sentences, *W. Va. Code*, 61–11–21, provides that the two sentences shall run consecutively unless the trial court, in its discretion, provides that they shall run concurrently.

Given all the circumstances of the case, the Court is of the opinion that the sentences imposed upon the defendant were not disproportionate or improper.

For the reasons stated, the judgment of the Circuit Court of Cabell County is affirmed.

Affirmed.