485 S.E.2d 676

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**John PHILLIPS, Defendant Below, Appellant.**

No. 23535.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 15, 1997.

Decided April 10, 1997.

508

Ira M. Haught, Harrisville, for Appellant.

Michele Rusen, Prosecuting Attorney, Parkersburg, for Appellee.

**PER CURIAM:**

John Phillips, the appellant and defendant below, appeals his convictions of two counts of aggravated robbery and one count of kidnapping entered by the Circuit Court of Wood County. Phillips contends that the trial court erred in refusing to instruct the jury on the lesser included offense of nonaggravated robbery, and that the 140 year sentence he received was excessive. We find the court properly refused the nonaggravated robbery instruction, and the 140 year sentence was proportionate to the character and degree of the offences committed. Consequently, we affirm the June 13, 1995, order of the Circuit Court of Wood County.

## I.

### FACTS

On the evening of November 3, 1993, at approximately 7:30 p.m., the defendant, John Phillips [hereinafter "Phillips"], entered a Hardee's restaurant in Parkersburg, West Virginia. There were seven employees working in the restaurant that night. Phillips waited for customers to leave and then proceeded behind the counter while pointing an air pistol at the head and shoulders of the store manager. The pistol resembled a real gun, and the employees who testified at trial indicated that they believed the weapon was real.[1] They further indicated that they were afraid and believed Phillips would use the gun if they did not follow his orders.

Phillips instructed all of the employees, except for the manager, to enter the cooler. He threatened to kill the manager if they attempted to leave. Phillips, weapon in hand, then escorted the manager to different points in the restaurant and collected money from the safe and a cash register. Finally, he took the manager to join the other employees in the cooler, threatened to kill anyone who did not remain in the cooler for an additional ten minutes, and left the premises. His hurried departure was observed by a drive-through customer who reported the incident to police.

---

1. The pistol was not loaded, and Phillips had no ammunition for the pistol in his possession. The restaurant employees, however, were unaware of this fact during the robbery.

Phillips then went into a local bar/strip club where he spent between $100 and $200 drinking and tipping the performers. A couple of hours after the robbery of Hardee's, and after visiting the bar, Phillips entered a Rax Restaurant at approximately 9:45 p.m. There were four employees working that evening. Phillips displayed his gun and gathered the four employees together behind the counter. He then ordered them into the office where he instructed them to turn around and face the wall. Phillips ordered the manager to assist him in collecting money from the office, the safe and various cash registers in the restaurant. Prior to departing, Phillips ordered all of the employees to get into the walk-in cooler, where he told them to stay for ten minutes. He promptly returned to ask about the alarm system. Before leaving a second time, he grabbed an eighteen-year-old female employee and told the other employees that he would kill her if they came out of the cooler. He then stated that he would release her in five minutes. Phillips put the girl in his car and instructed her to give him directions to the nearest interstate. She directed him to Interstate 77.

Phillips entered I–77 traveling north. Sometime thereafter, Phillips was observed by an officer of the West Virginia State Police. The officer followed Phillips. After observing that he was being followed, Phillips instructed the girl to get down on the floorboard of the vehicle, a small car. He then began to accelerate, and a high-speed chase involving several police units followed. It was dark, and one police officer testified that there was a heavy fog over the road. At times during the chase, Phillips drove at speeds up to 125 miles per hour. He crossed the median approximately three times and once traveled north in the southbound lane for an unknown distance. Officers ultimately formed a traveling road block. After Phillips struck the cruisers surrounding him with his vehicle, he stopped. The chase lasted ap-

proximately twenty-five minutes and covered a thirty-five mile stretch of I–77. The girl was retrieved from the car, and Phillips was taken into custody. Phillips had detained the girl against her will for approximately one-and-one-half hours.

After a four day jury trial, Phillips was found guilty of two counts of aggravated robbery and one count of kidnapping. He was sentenced to forty-five years on each of the aggravated robbery counts and fifty years on the kidnapping count, each sentence to be served consecutively. Phillips filed a pro-se motion for reconsideration of his sentence, claiming that the sentence was excessive. By order filed on June 13, 1995, the Circuit Court of Wood County denied the motion. It is from that order that Phillips, represented by counsel, now appeals.

## II.

### AGGRAVATED ROBBERY

■ Phillips was indicted and later convicted of two counts of aggravated robbery "by the threat or presenting of a firearm," pursuant to W. Va.Code § 61–2–12 (1961) (1992 Repl.Vol.).[2] He argues that the trial court erred by refusing to instruct the jury on the lesser included offense of nonaggravated robbery. Phillips contends that he was entitled to such an instruction because the robbery was committed by the use of an air pistol that discharged pellets, rather than a firearm. We disagree. In Syllabus point one of *State v. Jones*, we held:

The question of whether a defendant is entitled to an instruction on a lesser included offense involves a two-part inquiry. The first inquiry is a legal one having to do with whether the lesser offense is by virtue of its legal elements or definition included in the greater offense. The second inquiry is a factual one which involves a determination by the trial court of whether there is evidence which would tend to prove such

2. The penalty for aggravated robbery is set forth in W. Va.Code § 61–2–12 (1961) (1992 Repl. Vol.), which provides in relevant part:

If any person commit, or attempt to commit, robbery by partial strangulation or suffocation, or by striking or beating, or by other violence

to the person, or by the threat or presenting of firearms, or other deadly weapon or instrumentality whatsoever, he shall be guilty of a felony, and, upon conviction, shall be confined in the penitentiary not less than ten years.

lesser included offense. *State v. Neider,* 170 W.Va. 662, 295 S.E.2d 902 (1982).

174 W.Va. 700, 329 S.E.2d 65 (1985).

■ We need not engage in an analysis of the first part of the above-described inquiry because we have previously determined that "nonaggravated robbery is a lesser included offense of aggravated robbery." *State v. Massey,* 178 W.Va. 427, 432, 359 S.E.2d 865, 870 (1987). Thus, we proceed to consider whether there was evidence presented at trial that would tend to prove that Phillips committed nonaggravated robbery. In making this determination, we look to the evidence pertaining only to the element of aggravated robbery that distinguishes it from nonaggravated robbery. "It is apparent that because the legal definition of a lesser included offense requires its elements to be embraced within the greater offense, the primary factual inquiry will center on those elements of the greater offense which are different from the elements of the lesser offense." *State v. Neider,* 170 W.Va. 662, 665, 295 S.E.2d 902, 905 (1982).

In *State v. Harless,* 168 W.Va. 707, 712, 285 S.E.2d 461, 465 (1981), we stated that "the distinguishing feature of a nonaggravated robbery is that it is accomplished, not through violence to the victim or the threat or presentation of firearms or other deadly weapon or instrumentality, but through intimidation that induces fear of bodily injury in the victim." Conversely stated, the element of aggravated robbery that differs from nonaggravated robbery is violence to the victim or the threat or presentation of firearms or other deadly weapons. Thus, Phillips would have been entitled to a jury instruction on nonaggravated robbery under the facts of this case only if there was a question of fact as to whether Phillips threatened or presented a firearm or other deadly weapon.

Phillips argues that he was entitled to an instruction on the lesser included offense of nonaggravated robbery because the air pistol he used in committing the two robberies was not a firearm, and, thus, his use of such air pistol does not fall within the scope of "the threat or presenting of firearms" as required for aggravated robbery.[3] In light of our previous interpretations of the language "by the threat or presenting of firearms," we find that Phillips' reasoning is flawed.

■ In 1950, in upholding an aggravated robbery conviction where no firearm was observed during the robbery, but where the robber made a gesture indicating that he had a concealed weapon, and the victim testified that she thought he had a gun and was afraid, we held:

> Under Code, 61–2–12, one who enters a home or place of business of another and makes a gesture indicating that he has in his possession a firearm or other deadly weapon, immediately orders the person or persons there in charge to take a certain position, remain there, and not follow him, and then takes physical possession of money or other things of value then on said premises and in the control of the person or persons in charge thereof, is guilty of armed [aggravated] robbery. The threat of the use of a firearm or other deadly weapon constitutes robbery by putting in fear.

Syl. pt. 1, *State v. Young,* 134 W.Va. 771, 61 S.E.2d 734 (1950). In reaching this holding, the Court observed that W. Va. § 61–2–12 contained the language "or by the threat or presenting of firearms." *Young* at 781, 61 S.E.2d at 740. The Court stated that "leaving out the words 'or presenting', the language reads 'or by threat of firearms'." *Id.* The Court then concluded that, properly construed, this statute clearly included within the offense of aggravated robbery the *threat*

---

**3.** In support of his argument, Phillips relies on the definition of a firearm that is found in W. Va.Code § 62–12–2(d) (1986) (1992 Repl.Vol.). As will be discussed in this opinion, W. Va.Code § 61–2–12 (1961) (1992 Repl.Vol.) refers to "the threat or presenting of firearms," which language has been interpreted by this court as not requiring the actual presence of a firearm. Consequently, whether or not Phillips used an actual firearm is not determinative of the issue with which we are herein faced. Moreover, W. Va. Code § 62–12–2 pertains to eligibility for probation and contains a restriction on probation for individuals who commit a felony with the use, presentment or brandishing of a firearm. The State elected not to pursue such a restriction in the case *sub judice.* We therefore find it unnecessary to address that statute.

of using a firearm. The court commented that the threatened use of a firearm places the victim in fear to the same extent as if a firearm or other deadly weapon had actually been presented.

We addressed a similar issue in *State v. Massey*, 178 W.Va. 427, 359 S.E.2d 865 (1987). The defendant in *Massey* argued that the court erred in refusing to instruct the jury on the lesser included offense of nonaggravated robbery because she used a toy gun in committing the robbery. The *Massey* Court concluded that the defendant was not entitled to a nonaggravated robbery instruction. The Court commented further that the "defendant's position that a verdict on nonaggravated robbery would have been sustainable if the jury had concluded the robbery was committed with the use of a toy handgun" was an incorrect statement of the law. *Massey* at 432, 359 S.E.2d at 870. The Court explained "[w]e have specifically held that the 'threat ... of firearms,' as the phrase is used in W. Va.Code, 61–2–12, does not require the actual use or presentment of a firearm. It requires only such action by the defendant as would reasonably lead the victim to believe he had possession of a firearm." *Id.*

Finally, relying on the earlier case of *State v. Young*, this Court upheld the giving of an aggravated robbery instruction in a case where the defendant put his hand in his pocket and gestured in such a way that the victim believed he had a gun. *State v. Combs*, 175 W.Va. 765, 338 S.E.2d 365 (1985) (per curiam).

 The above cited cases clearly establish that the presence of a firearm is not required for a conviction of aggravated robbery. It is sufficient that the robber threatened the use of a firearm and that the victims reasonably believed that he had possession of a firearm. We have thoroughly reviewed the record in this case. The evidence that Phillips displayed the air pistol

and threatened to injure or kill the employees of Hardee's and Rax if they did not follow his instructions was uncontroverted. Furthermore, all of the employees who testified indicated that they believed the weapon displayed by Phillips was a real gun, and they believed he would use it against them if they did not cooperate. We find this undisputed evidence was sufficient upon which to establish the threatened use of a firearm as required for a conviction of aggravated robbery. "Where there is no evidentiary dispute or insufficiency on the elements of the greater offense which are different from the elements of the lesser included offense, then the defendant is not entitled to a lesser included offense instruction." Syl. pt. 2, *State v. Neider*, 170 W.Va. 662, 295 S.E.2d 902 (1982).

 An abuse of discretion standard of review is applicable to this issue. "Whether facts are sufficient to justify the delivery of a particular instruction is reviewed by this Court under an abuse of discretion standard. In criminal cases where a conviction results, the evidence and any reasonable inferences are considered in the light most favorable to the prosecution." Syl. pt. 12, *State v. Derr*, 192 W.Va. 165, 451 S.E.2d 731 (1994). Applying this standard, we find that the trial court did not abuse its discretion in refusing Phillips' nonaggravated robbery instruction.

### III.

### EXCESSIVE SENTENCE

Phillips was sentenced to forty-five years on each of the aggravated robbery counts and fifty years on the kidnapping count, each sentence to be served consecutively.[4] We interpret Phillips' argument to be that this sentence is not proportioned to the character and degree of the offenses for which he was convicted as required by West Virginia Constitution, Article III, Section 5. We have previously held:

> "is returned, or is permitted to return, alive, without bodily harm," but where a "concession or advantage of any sort has been paid or yielded, ... shall be confin[ed] in the penitentiary for any term of years not less than twenty."

4. W. Va.Code § 61–2–12 (1961) (1992 Repl.Vol.), provides, in part, that a person convicted of aggravated robbery shall be "confined in the penitentiary not less than ten years." Under W. Va.Code § 61–2–14a (1965) (1992 Repl.Vol.), a person convicted of kidnapping where the victim

" 'Article III, Section 5 of the West Virginia Constitution, which contains the cruel and unusual punishment counterpart to the Eighth Amendment of the United States Constitution, has an express statement of the proportionality principle: "Penalties shall be proportioned to the character and degree of the offence." ' Syllabus Point 8, *State v. Vance,* 164 W.Va. 216, 262 S.E.2d 423 (1980)." Syllabus Point 1, *State v. Houston,* 166 W.Va. 202, 273 S.E.2d 375 (1980).

Syl. pt. 8, *State v. Buck,* 170 W.Va. 428, 294 S.E.2d 281 (1982).

 In *State v. Cooper,* 172 W.Va. 266, 304 S.E.2d 851 (1983), this Court recognized two tests for determining whether a sentence is so disproportionate that it violates our constitution: [5]

The first is subjective and asks whether the sentence for the particular crime shocks the conscience of the court and society. If a sentence is so offensive that it cannot pass a societal and judicial sense of justice, the inquiry need not proceed further. When it cannot be said that a sentence shocks the conscience, a disproportionality challenge is guided by the objective test we spelled out in Syllabus Point 5 of *Wanstreet v. Bordenkircher,* 166 W.Va. 523, 276 S.E.2d 205 (1981):

In determining whether a given sentence violates the proportionality principle found in Article III, Section 5 of the West Virginia Constitution, consideration is given to the nature of the offense, the legislative purpose behind the punishment, a comparison of the punishment with what would be inflicted in other jurisdictions, and a comparison with other offenses within the same jurisdiction.

*Cooper* at 272, 304 S.E.2d at 857.

 To determine whether the sentence imposed on Phillips shocks the conscience, we look to all of the circumstances surrounding his offenses, the information contained in the presentence investigation report and the findings made by the sentencing judge. During the robberies, Phillips threatened eleven individuals employed by the two restaurants. He also kidnapped a young woman who was only eighteen years old and took her with him on a nighttime, high-speed chase, apparently through heavy fog, which involved speeds of up to 125 miles per hour, traveling in the wrong direction on I-77, and collisions between Phillips' automobile and police cruisers attempting to stop him. He endangered police officers as well as the motorists traveling on I-77. In addition, the presentence report indicated that Phillips had a juvenile record, including a charge for larceny of his mother's car, that he had been arrested in North Carolina in 1986 for auto larceny and that he was discharged from the Navy for "other than honorable" conduct after going AWOL.[6] In addition, Phillips' psychiatric history suggested that he had average intelligence, a history of, and high potential for, substance abuse and signs of a personality disorder and antisocial characteristics. Finally, the report indicated that Phillips had detainers pending in the State of Ohio.

In imposing the sentence, the trial court, addressing Phillips, commented:

This crime, by you, is a particularly offensive, violent and dangerous crime. It makes no difference that you used a pellet gun rather than a real gun. It was purchased for the sole reason that it looked like a real gun [sic] and it had the same effect.

You endangered the life of the young lady that you kidnapped, the officers that tried to stop you, and any other motorists that might have been on the highways at

---

**5.** The State notes this Court's holding that "[s]entences imposed by the trial court, if within statutory limits and if not based on some unpermissible factor, are not subject to appellate review." Syl. pt. 4, *State v. Goodnight,* 169 W.Va. 366, 287 S.E.2d 504 (1982). We note, however, that this rule is not applicable to the case at bar, where the appellant is challenging sentencing imposed under a statute with no upper limit on the

grounds that it violates the principle of proportionality contained in Article III, Section 5 of the West Virginia Constitution. *See, e.g., State v. Cooper,* 172 W.Va. 266, 271, 304 S.E.2d 851, 855–856 (1983); *State v. Rogers,* 167 W.Va. 358, 360, 280 S.E.2d 82, 84 (1981).

**6.** AWOL is the acronym for absent without leave.

the time. I get the impression that you have no sense of guilt for what you have done, that you feel yourself to have been a humanitarian robber, I suppose, but your history of antisocial behavior, as is quite evidence [sic] from this report, along with the prospect of your facing additional charges in the State of Ohio, for other offenses, of the same nature and character, don't warrant any lenient treatment by this Court in your sentencing.

Based upon the violent nature of Phillips' crimes, the inherent dangers of his attempted escape, and the exorbitant risk to life and limb of numerous innocent persons created by the totality of his conduct, we find that the sentence imposed upon him does not shock the conscience of the court and society. Consequently, we proceed to the objective test.

■ We first consider the nature of the offenses of which Phillips was convicted, and the legislative purpose behind the statutory punishment. This court has observed that "'[a]ggravated robbery in West Virginia has been recognized as a crime that involves a high potentiality for violence and injury to the victim involved.'" *State v. Woods,* 194 W.Va. 250, 255, 460 S.E.2d 65, 70 (1995) (per curiam) (quoting *State v. Ross,* 184 W.Va. 579, 582, 402 S.E.2d 248, 251 (1990) (per curiam)). The same is true of kidnapping. Consequently, the legislature has provided circuit courts with broad, open-ended discretion in sentencing individuals for the offenses of aggravated robbery and kidnapping.

We next compare Phillips' punishment with comparable sentences in other jurisdictions.[7] In *State v. White,* 593 So.2d 882 (La.Ct.App.1992), White, acting with an accomplice, threatened to kill a sixty-nine-year-old man with a sawed-off shot gun. White then struck the man in the head with the butt of the shotgun. Finally, White and his companion took the man's keys and money and drove off in his truck after tying him up in an abandoned house. The Court of Appeal of Louisiana affirmed White's concur-

rent robbery sentences of thirty-three years of imprisonment at hard labor without benefit of probation, parole or suspension, and twenty years for kidnapping with the first five years to be served without benefit of probation, parole or suspension.

The Court of Appeal of Louisiana also affirmed two concurrent sentences of thirty years at hard labor, without benefit of parole, probation or suspension of sentence in *State v. Thomas,* 589 So.2d 555 (La.Ct.App.1991). Thomas and a companion, who were both armed with pistols, approached a couple sitting in a car that was parked in the lot of a city park. Thomas ordered the female passenger to get out of the car and lie on the ground. He proceeded to unbutton her shorts and fondle her. He then allowed her to return to the car and drive away. In the meantime, Thomas' companion ordered the male passenger to get out of the car. Thomas and his companion robbed the man of certain items found on his person, and Thomas struck him in the head with the butt of the shotgun. The victim then escaped and ran away. In upholding the sentence, the appellate court observed that the trial court, in imposing the sentence, had considered that Thomas had a juvenile record that included simple battery of a police officer, public drunkenness, criminal mischief, attempted second degree murder and two counts of aggravated battery. The Court of Appeal further observed that the trial court had considered Thomas' background, social history, education, employment record, health, alcohol and drug usage, the fact that he had not been provoked and the lack of excuse or justification for his offenses.

In *People v. Murph,* 185 Mich.App. 476, 463 N.W.2d 156 (1990), the Court of Appeals of Michigan upheld four concurrent sentences of forty to sixty years for two counts of kidnapping and two counts of armed robbery.[8] The incident leading to Murph's conviction occurred when he entered a parked van and waited for the driver. Two females eventually returned to the van and began to

---

7. For additional cases not discussed, see *infra* note 10.

8. Murph was also sentenced to thirty to sixty months for unlawfully driving away an automobile and two terms of two years for possession of a firearm during the commission of a felony.

drive away. Murph told them he had a gun and instructed the driver to travel ahead and not to look back. The passenger turned around and Murph put his gun to her head. Murph then took their wallets, purses and other valuables. He ultimately directed the driver to stop and ordered the two women from the vehicle. He then drove away.

The Supreme Court of Kansas found that consecutive sentences of five years to life for aggravated robbery and ten years to life for kidnapping were not excessive in *State v. Alsup*, 239 Kan. 673, 722 P.2d 1100 (1986), *overruled on other grounds, State v. McDaniel*, 255 Kan. 756, 877 P.2d 961 (1994). Alsup had entered a drugstore, grabbed a fourteen-year-old female employee and pointed a sawed-off shotgun at her abdomen. He ordered the store owner to the back of the store and made the pharmacist lie on the floor. He then threatened to kill the girl if the owner did not give him drugs. Finally, he took the girl with him as he left the store and told the owner that he would kill her if the police were summoned.

After considering the offenses involved in each of the above cases, and the respective sentences imposed, we believe that Phillips' sentence is constitutionally proportionate to the character and degree of the offenses of which he was convicted. In carrying out his crimes, Phillips needlessly jeopardized the lives of a large number of innocent persons. In addition, the trial judge, who was able to observe Phillips' demeanor, concluded that Phillips felt no remorse for his actions and, based upon information contained in the presentence investigation report, determined further that Phillips was not likely to be successfully rehabilitated.

We have found only two West Virginia cases in which a defendant was charged with both aggravated robbery and kidnapping. In *State v. Black*, 175 W.Va. 770, 338 S.E.2d 370 (1985) (per curiam), the defendant, acting with another, entered a Holiday Inn and robbed the establishment while indicating he had a gun in his pocket. The robbers forced two employees to accompany them as they departed. The two employees were not physically harmed and were voluntarily released in a park approximately one-and-one-half-hours later. This Court affirmed consecutive sentences of fifteen years for one count of armed robbery and twenty years for kidnapping. We noted that the defendant had a criminal record that included fifty-two misdemeanor charges, twelve of which resulted in convictions. We further noted that there had been five felony charges against him, with one still pending; that there were reports indicating that the defendant was involved in attempted break-outs from jail; and that the defendant had a history of drug abuse and alcoholism.

In the second case, *State v. Sheppard*, 172 W.Va. 656, 310 S.E.2d 173 (1983), the defendant did not challenge his sentence of three consecutive terms of 30 years for two counts of kidnapping and one count of armed robbery. The *Sheppard* defendant, while wearing a ski mask and brandishing a gun, approached a grocery store employee in the store parking lot just after the employee exited his car. The defendant informed the employee that he was going to rob the store with the employee's help. He then entered the store with the employee and carried out the robbery. The employee escaped and the defendant forced a second employee to drive him away from the scene by threatening to shoot a bystander. After a while, the defendant fired a shot into the glove compartment of the vehicle and fired another shot out the window. The employee ultimately escaped unharmed when the defendant instructed him to stop at a tavern to buy beer and gas.

We have been asked to consider the proportionality of sentences for aggravated robbery on many occasions. Following is a discussion of several such cases. Most recently, in *State v. Woods*, 194 W.Va. 250, 460 S.E.2d 65 (1995) (per curiam), this Court affirmed a thirty-six year sentence imposed upon a defendant who committed aggravated robbery of a convenience store using a shot gun. The *Woods* defendant confronted a female clerk with a gun. He then collected the contents of the cash register, forcibly kissed the clerk and departed. In concluding that the sentence was protected by the parameters of sound discretion, this Court observed the violent and deliberate nature of the robbery

and the fact that the defendant violently resisted arrest.

Additionally, in *State v. Ross*, 184 W.Va. 579, 402 S.E.2d 248 (1990) (per curiam), we affirmed a sentence of 100 years for attempted aggravated robbery. The defendant, who was nineteen years old, also received sentences of one to fifteen years for burglary and one to five years for first-degree sexual assault. Ross broke into his victim's home, grabbed her and threatened to stab her. He placed a pillow over her head, unbuttoned her pants and touched her genital area. He then asked her if she had any money and accompanied her into her living room. The victim began to scream and police officers were summoned by a neighbor. When police officers arrived, Ross exited the front door with the victim, shoved her toward the officers and ran away. In affirming the sentence, this Court commented on the defendant's use of violence and a potentially deadly weapon in committing the crimes charged, the report of his psychological evaluation, the nature of his character and his record of numerous arrests for violent and antisocial behavior.[9]

Furthermore, in *State v. Spence*, 182 W.Va. 472, 388 S.E.2d 498 (1989), we upheld a sixty-year sentence for aggravated robbery where the defendant robbed a convenience store by approaching a nineteen-year-old female clerk from behind, holding a large kitchen-type chopping knife to her back and asking for the money from the cash register. Spence then ordered the girl to get down on the floor and he left. The Court noted that Spence had a prior conviction for armed robbery and had been arrested seventeen times, and convicted eleven times, in the previous eight-and-one-half years. This Court noted further that the trial court was particularly concerned about the permanent emotional damage to the young victim. We found this case comparable to *State v. Glover*, 177 W.Va. 650, 355 S.E.2d 631 (1987), discussed below, and concluded that the sentence was not disproportionate.

We also upheld the sentence imposed in *State v. England*, 180 W.Va. 342, 376 S.E.2d 548 (1988), in which the defendant received a life sentence with parole eligibility in ten years for robbing an Exxon service station. During the robbery, the defendant discharged a shot gun three times: once toward the highway, once into an empty booth and once into a telephone booth. No injury resulted from these discharges. The defendant had a record of multiple criminal violations including possession of a controlled substance, nonaggravated robbery and grand larceny. The Court observed that the circumstances of the robbery were indisputably violent, and the defendant displayed a manifest indifference to human life.

Likewise, the defendant in *State v. Martin*, 177 W.Va. 758, 356 S.E.2d 629 (1987), was sentenced to forty-five years for armed robbery and a consecutive term of one to fifteen years for burglary. Martin broke into the home of his sixty-one-year-old male victim and was subsequently discovered in the house by the victim. A struggle ensued. Martin overpowered his victim, and tied the victim's left arm behind him with a belt. Thereafter, Martin held an antique revolver to the victim's right ear and pulled the trigger three times. Martin then covered the victim's head with a quilt, held a metallic object, presumably a knife, against the victim's neck and commented that it would be easy to stab the victim. Thereafter, the victim incorrectly assumed that Martin had left the house and freed himself. A second struggle occurred, during which the victim suffered a broken nose and a fractured cheek bone. On appeal, this court found that the forty-five year sentence on the aggravated robbery charge did not violate constitutional proportionality principles. The Court noted in its discussion that the robbery resulted in severe injury to the victim, and it took place

---

9. Justice Miller dissented to the Court's decision in *Ross*. Justice Miller first commented that the conviction for attempted aggravated robbery was based solely on the victim's claims. He noted that the defendant had no adult felony or misdemeanor record, and, although he had been arrested as a juvenile, he had been convicted only for destruction of property. Justice Miller also commented that the sentencing judge failed to provide concrete reasons in support of the 100 year sentence, but rather provided "a compendium of discursive, subjective observations...." *State v. Ross*, 184 W.Va. 579, 584, 402 S.E.2d 248, 253 (1990).

in the victim's home. The Court further commented that Martin's past record included two previous convictions of burglary, and the current offense was committed while Martin was living in a halfway house awaiting parole on the second burglary conviction.

The same year we decided *State v. Martin,* we found a seventy-five-year sentence for aggravated robbery was not unconstitutionally disproportionate in *State v. Glover,* 177 W.Va. 650, 355 S.E.2d 631 (1987). Glover severely beat and robbed a fifty-three-year-old man, who was then stripped of his coat, shoes and socks and left in the mud beside a road. The victim suffered broken ribs, numerous bruises and lacerations and hypothermia. In upholding the seventy-five-year sentence, this Court observed that Martin had a felony record that spanned approximately twenty years, that he had served time in the penitentiary, that the presentence report recommended that he be given the maximum sentence due to his history of repeated violence and that the victim nearly died. The Court also observed that "[r]obbery has always been regarded as a crime of the gravest character," and cited other jurisdictions that had imposed harsh sentences for robbery.[10] *Glover* at 659, 355 S.E.2d at 640.

Furthermore, in *State v. Cooper,* 172 W.Va. 266, 304 S.E.2d 851 (1983), the Court found that a forty-five-year sentence for aggravated robbery was disproportionate. *Cooper* involved a nineteen-year-old defendant who, with a companion, attacked an intoxicated man and stole his wallet. The victim was knocked unconscious in the attack and required several stitches, but he fully recovered. The defendant had only one prior arrest, which was for public intoxication.

Finally, in *State v. Buck,* 173 W.Va. 243, 314 S.E.2d 406 (1984), the Court found that a seventy-five-year sentence for aggravated robbery violated our constitutional provision of proportionality where the defendant and his companion struck the proprietor of a store in the head several times with a tire iron, and then robbed the store of approximately $1,200. The Court observed that the defendant, who was twenty-three years old, had no adult criminal record, but had a substantial juvenile record. When the case was appealed after remand, the Court affirmed a thirty-year sentence. *State v. Buck,* 178 W.Va. 505, 361 S.E.2d 470 (1987).

We have been asked to review kidnapping sentences on few occasions. In *State v. Farmer,* 193 W.Va. 84, 454 S.E.2d 378 (1994), the defendant ordered his estranged wife and her co-worker, at gun point, to get into the co-worker's vehicle. He permitted the co-worker to exit the car after driving less than a block. He then drove his wife to a remote cemetery and apparently threatened to kill his wife and himself. His wife ultimately persuaded him to allow her to leave, alone, in the vehicle. The defendant was sentenced to concurrent terms of six months for joy riding and ninety-nine years for kidnapping. The sentencing record indicated that the defendant had prior convictions of rape, for which he was placed on probation; first-degree sexual abuse, which he committed while on probation; and a felony in Florida which involved the use of an armed weapon. The *Farmer* Court applied the general principle that prohibits appellate review of sentences imposed by the trial court that are within statutory limits and not based on some impermissible factor[11] and concluded that the sentence was not subject to review.

In the instant case, the record establishes that the trial court, in determining the appropriate sentence to be imposed, considered the violent and dangerous nature of Phillips' crimes. The trial court also contemplated the information contained in the pre-sentence

10. "*See, e.g., State v. Boag,* 104 Ariz. 362, 370, 453 P.2d 508, 516 (1969) (en banc) (75 to 99 years for robbery is not cruel and unusual punishment); *People v. Isitt,* 55 Cal.App.3d 23, 27–28, 30–31, 127 Cal.Rptr. 279, 281, 283–84 (1976) (life sentence without possibility of parole for 'kidnapping for robbery' is not disproportionate), review denied, Mar. 31, 1976; *State v. Victorian,* 332 So.2d 220, 221–22 (La.1976) (45 years without possibility of parole is not 'cruel, excessive or unusual punishment' for armed robbery, under statute authorizing between 5 and 99 years without possibility of parole); *Garrett v. State,* 486 S.W.2d 272, 274 (Mo.1972) (99 years for first degree robbery, with a prior felony, is not excessive punishment)." *State v. Glover,* 177 W.Va. 650, 659, 355 S.E.2d 631, 640 (1987).

11. See *supra* note 5.

investigation report, which indicated that Phillips had a juvenile record, including a charge for larceny of his mother's car. The report also stated that Phillips was discharged from the Navy for "other than honorable" conduct after going AWOL, and he was arrested in North Carolina in 1986 for auto larceny. In addition, Phillips' psychiatric history indicated that he had average intelligence; he had a history of, and high potential for, substance abuse; and he suffered from a personality disorder and antisocial characteristics. Furthermore, the report indicated that Phillips had detainers pending in the State of Ohio. Based upon a consideration of the totality of the circumstances of this case, we find that the sentence imposed upon Phillips was not disproportionate to the character and degree of the offenses of which he was convicted.

Finally, we are unpersuaded by Phillips' argument that he would have received a lighter sentence if he had been convicted under the provisions of the kidnapping statute providing for a life sentence.[12] Presuming, as Phillips does, that the jury would have granted him mercy on the life sentence, he would have been eligible for parole after ten years. Similarly, the fifty-year sentence he received for the kidnapping charge would result in parole eligibility in twelve-and-one-half years,[13] a difference of only two-and-one-half years. In either instance, a sentence of life with mercy or of fifty years, the sentence for the two counts of aggravated robbery also must be considered in calculating parole eligibility.

### IV.

### CONCLUSION

For the reasons herein stated, we find that the circuit court did not abuse its discretion in refusing to instruct the jury on the lesser included offense of nonaggravated robbery, and we find that the 140 year sentence was constitutionally proportionate to the charac-

12. See W. Va.Code § 61–2–14a (1965) (1992 Repl.Vol.).

13. Under W. Va.Code § 62–12–13(a) (1988) (1992 Repl.Vol.): "Any prisoner of a penitentiary of this state, to be eligible for parole:

ter and degree of the offenses committed by Phillips. Consequently, we affirm the June 13, 1995, order of the Circuit Court of Wood County.

Affirmed.

(1) (A) Shall have served the minimum term of his or her indeterminate sentence, or shall have served one fourth of his or her definite term sentence...."