**STATE OF WEST VIRGINIA**

George Street,
Petitioner Below, Petitioner

**FILED**
**January 17, 2020**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs.)  No. 18-0779** (Mercer County 12-C-60-DS and 18-C-29-DS)

R.S. Mutter, Deputy Superintendent,
McDowell County Corrections,
Respondent Below, Respondent

## MEMORANDUM DECISION

Petitioner George Street, by counsel Ward Morgan, appeals the Circuit Court of Mercer County's August 22, 2018, order denying his petition for a writ of habeas corpus. Respondent R.S. Mutter, Deputy Superintendent, by counsel Abby G. Cunningham, filed a response.[1] On appeal, petitioner argues that the circuit court erred in denying his amended habeas petition on the grounds of ineffective assistance of trial counsel; a disproportionate sentence; and lack of a knowing, voluntary, and intelligent guilty plea.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In June of 1999, petitioner was indicted on one count of first-degree murder for the shooting death of George Kennebrew. According to the record, in March of 1999, petitioner and the victim were both at a nightclub in Bluefield, West Virginia, when they engaged in a fight inside the club. Petitioner left the club and, thereafter, the victim and a group of others also left the club. Once outside, the group noticed petitioner "was in . . . the middle of the street coming from the library" before he "approached [the victim] with a small caliber handgun" and shot the victim in the stomach. The victim eventually died from the gunshot wound.

During the criminal proceedings regarding this charge, petitioner was first represented by Teresa Sage, with Thomas M. Janutolo Jr. appointed as co-counsel. Several months later, Ms. Sage withdrew her representation and the court appointed Thomas L. Fuda to represent petitioner, with Mr. Janutolo continuing to serve as co-counsel. Relevant to petitioner's arguments in this appeal, it is important to note that, prior to trial, petitioner's counsel moved for a continuance based on the belief that the "defense may become one of self-defense," which would require additional time for

---

[1]Effective July 1, 2018, the correctional facility positions formerly designated as "wardens" are now designated "superintendents." See W. Va. Code § 15A-5-3.

preparation.

In October of 1999, petitioner entered into a binding plea agreement whereby he would enter a plea of guilty to one count of first-degree murder in exchange for a sentence of life, with mercy. In obtaining a factual basis for the plea agreement, the following exchange occurred:

> THE COURT: You did, in fact . . . , go get a handgun, come back and sho[o]t Mr. Kennebrew in the stomach?
>
> [PETITIONER]: Yes, sir.
>
> THE COURT: With the intent . . . to kill him?
>
> [PETITIONER]: Yes, sir.

At that time, the circuit court took the plea under advisement, pending the presentence investigation report. After reviewing the presentence investigation report in November of 1999, the circuit court accepted the plea and sentenced petitioner to a term of incarceration of life, with the possibility of parole.

In October of 2006, petitioner filed a pro se petition for a writ of habeas corpus. Without appointing counsel or holding an omnibus hearing, the habeas court summarily denied the petition. Petitioner appealed that denial to this Court, which refused the same.

In January of 2012, petitioner filed a second pro se petition for a writ of habeas corpus, wherein he alleged that counsel was ineffective for several reasons. After the appointment of counsel, petitioner filed an amended petition setting forth the following grounds for relief: (1) ineffective assistance of counsel related to counsel's failure to address petitioner's drug and alcohol use at the time of the offense and in regard to petitioner's assertion of self-defense; (2) violation of state and federal constitutional rights due to a disproportionate sentence; and (3) the guilty plea was not knowingly, intelligently, and voluntarily made. Petitioner also asserted "all additional grounds raised in his *Losh*[2] checklist and original petition."

In October of 2012, the circuit court held an omnibus hearing, during which petitioner and only one of his three trial attorneys, Mr. Fuda, testified. According to Mr. Fuda, he did not serve as petitioner's lead counsel due to health reasons. In fact, Mr. Fuda testified that he did not recall many relevant facts from petitioner's case, other than it involved "a shooting outside of a bar." Specifically as it relates to petitioner's claims on appeal, Mr. Fuda testified that he did not recall whether he discussed potential defenses of voluntary intoxication or self-defense and that he did not recall whether he discussed the plea with petitioner, although he believed that Mr. Janutolo "took the lead" on the plea discussions.

During his testimony, petitioner indicated that he was under the influence of alcohol and

---

[2]*Losh v. McKenzie*, 166 W. Va. 762, 277 S.E.2d 606 (1981).

cocaine during the commission of the crime. Although he testified that there were several facts he could not recall about the night in question, petitioner did testify that the victim stated "that he was going to 'come get'" petitioner because of an earlier physical altercation inside the nightclub. According to petitioner, he feared for his life as a result of this comment, but he also admitted that he never saw the victim with a gun. Petitioner also testified that his trial counsel never discussed the issue of his voluntary intoxication or the possibility of self-defense, nor did his attorneys ever have him evaluated to determine his criminal culpability. According to petitioner, if he had known about other possible defenses, he would not have taken the State's plea offer. Although petitioner could remember specifics from the night of the crime, including exactly what and how much he drank and arguing with the victim "over who had the most money," he testified that he could not remember other specifics, such as who gave him the cocaine or who was present at the nightclub. Petitioner also testified that he did not have a gun in his possession when he went to the nightclub, but that someone gave one to him. However, when questioned about a contradictory statement he gave to a probation officer when completing the presentence investigation report, petitioner testified that he did not remember telling the probation officer that he took a .22 automatic firearm to the nightclub on the night of the shooting.

After the omnibus hearing, the circuit court entered an order on October 25, 2013, denying the petition. The court addressed petitioner's trial attorneys' extensive work on the case by parsing out their billing statements. According to the order, petitioner's attorneys spent over 200 hours working on petitioner's case, with Mr. Janutolo alone spending approximately 110 hours working on the case outside of court. The billing records also indicate that Mr. Janutolo met with petitioner six times prior to the plea agreement, while Mr. Fuda met with petitioner four times. According to the court, "[a]ll of their fee petitions indicate numerous conferences with witnesses, the investigator, the medical examiner, and their expert." Further, the court noted that the attorneys "retained the Boone Detective Agency, who billed for payment of 34.5 hours of investigation with associated travel of 408 miles." Finally, the court confirmed that counsel retained an expert to perform forensic analysis of extensive physical evidence related to the crime. Thereafter, petitioner appealed the denial to this Court. However, before a judgment could be rendered, petitioner was released on parole and filed a motion to withdraw his appeal as moot. By order entered on May 19, 2014, the Court granted that motion.

At some point, petitioner was again incarcerated upon the first-degree murder charge. In May of 2018, he filed an amended petition for a writ of habeas corpus simply "incorporating by reference all the facts and preserving all issues raised in the appellate brief filed on his behalf" from the earlier denial of his habeas petition. Thereafter, the circuit court entered an order denying the petition that "reaffirm[ed] its prior findings" and "reiterate[d] the same" for purposes of appeal. It is from the August 22, 2018, order denying him habeas relief that petitioner appeals.

This Court reviews appeals of circuit court orders denying habeas corpus relief under the following standard:

> "In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions

3

of law are subject to a *de novo* review." Syllabus point 1, *Mathena v. Haines*, 219 W.Va. 417, 633 S.E.2d 771 (2006).

Syl. Pt. 1, *State ex rel. Franklin v. McBride*, 226 W. Va. 375, 701 S.E.2d 97 (2009). On appeal, petitioner first alleges that his counsel was ineffective in failing to investigate or inform him of two possible defenses—diminished capacity due to voluntary intoxication and self-defense—to the charge against him and that, had he been informed of those defenses, he would have proceeded to trial. Upon our review, however, we find no error in the circuit court's denial of relief in regard to this claim.

The United States Supreme Court has recognized that "the right to counsel is the right to the *effective* assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970) (emphasis added). In determining whether counsel was ineffective, there are two essential elements that must be met:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687; *see* syl. pt. 5, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995) (adopting two-pronged *Strickland* test). As it relates to petitioner's appeal, the *Strickland* test also applies to claims of ineffective assistance arising from counsel's performance in connection with a plea hearing as well as the sentencing stage of the proceedings. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985).

In seeking to establish ineffective assistance, a petitioner must satisfy a "highly demanding" burden. *Kimmelman v. Morrison*, 477 U.S. 365, 383 (1986). Further, in regard to the element of deficient performance, the *Strickland* Court stated as follows:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence [or guilty plea], and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial

4

strategy."

466 U.S. at 689 (citations omitted).

In regard to the element of prejudice, a "defendant must show that there is a probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. As a result, deficient performance alone "does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691. However, upon review, the focus may not be entirely upon an "outcome determination;" instead, courts must make an additional determination that the actual result of the proceeding was "fundamentally unfair or unreliable." *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993). With the rigorous nature of the *Strickland* test firmly in mind, we address petitioner's arguments.

Petitioner claims that certain factors, including his use of alcohol and cocaine on the night in question, the physical altercation inside the nightclub between petitioner and the victim, and the victim's stated intention to "get" petitioner, all support his assertion that both a diminished capacity defense and self-defense were viable strategies below. Further, he argues that despite these facts, counsel failed to undertake a proper investigation of these defenses or otherwise discuss them with him. In his appeal, however, petitioner fails to even assert that he believes he had a valid diminished capacity defense due to voluntary intoxication. Instead, petitioner simply asserts that "he was a drug and alcohol user at the time of the offense" and that he "was intoxicated when he shot the victim." Petitioner then goes on to cite authority discussing when diminished capacity and voluntary intoxication may be available defenses and how such defenses can establish that defendants are entitled to a conviction of a lesser-included offense, but fails to apply the specific holdings in those cases to the facts of his appeal. Instead, he simply asserts that trial counsel never "explored these issues" with him, "had him evaluated by an expert," or "advised that his intoxication could serve as [a] defense to the . . . element of specific, premeditated intent."

This Court recently analyzed a similar issue in *Lloyd v. Terry*, No. 16-1166, 2018 WL 1319187, at *6 (W. Va. March 14, 2018)(memorandum decision). In addressing the claims on appeal in *Lloyd*, the Court relied on *Grayson v. Thompson*, 257 F.3d 1194 (11th Cir. 2001), for guidance and noted as follows:

> Grayson argued that his trial lawyer was ineffective for failing to develop evidence regarding his chronic alcoholism and intoxication at the time of the offense. The court advised that although the petitioner's claim was that his trial counsel should have done something more, the inquiry under the performance prong of *Strickland* was limited to whether the course of action followed by defense counsel was a reasonable one. [*Grayson*, 257 F.3d] at 1218-19. We agree.

*Lloyd*, 2018 WL 1319187, at *6. In that decision, the Court further noted that "*Strickland* itself involved . . . a claim that the defendant's lawyer had been ineffective for failing to request a psychiatric examination of his client. Consequently, *Strickland* has a good deal to say about the 'duty to investigate'" generally and in the context of possible defenses. *Id.* Indeed, *Strickland* provides as follows:

[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgements support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgements.

[W]hen a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable.

466 U.S. at 691.

We find that the record simply does not support a finding that additional investigation into petitioner's intoxication at the time of the crime was warranted.[3] Although petitioner believes that his consumption of alcohol and cocaine was sufficient to entitle him to a diminished capacity defense, he fails to assert that his level of intoxication left him "too drunk to be capable of deliberating and premeditating" such that his intoxication "may reduce murder in the first degree to murder in the second degree." Syl. Pt. 2, in part, *State v. Keeton*, 166 W. Va. 77, 272 S.E.2d 817 (1980). Moreover, despite the fact that he asserts his use of drugs and alcohol as a potential defense, petitioner nonetheless was able to recall specific facts about the night of the crime, when they proved favorable to his arguments, many years after the fact. This includes petitioner's assertion that he and the victim fought "over who had the most money," that the victim threatened to "come

---

[3]It is also important to note that, contrary to petitioner's argument, the record does not establish that trial counsel failed to investigate either a diminished capacity defense or a theory of self-defense, nor does it establish that counsel failed to discuss either defense with petitioner. As set forth above, petitioner was represented by three attorneys during his criminal proceedings, yet chose to call only one attorney, Mr. Fuda, to testify at the omnibus hearing. During his testimony, Mr. Fuda specifically indicated that, due to his health issues, Mr. Janutolo was lead counsel on petitioner's case. This is supported by the attorneys' billing requests for the case, in which Mr. Janutolo is shown to have submitted requests for substantially more hours working on the case than Mr. Fuda. Additionally, Mr. Fuda testified that he simply could not recall many of the specifics of petitioner's case, given that his representation occurred approximately thirteen years prior to the omnibus hearing. While it is true that petitioner testified that his attorneys did not discuss these defenses with him, his self-serving testimony is insufficient to establish that such investigation or discussion did not take place, especially considering that the habeas court was not presented with any testimony from Mr. Janutolo, the lead attorney handling petitioner's defense. In a habeas corpus proceeding, the "petitioner has the burden of proving by a preponderance of the evidence the allegations contained in his petition . . . which would warrant his release." Syl. Pt. 1, in part, *State ex rel. Scott v. Boles*, 150 W. Va. 453, 147 S.E.2d 486 (1966). Despite the fact that the record does not sufficiently establish that petitioner has satisfied his burden in regard to his allegations about possible defenses, we nonetheless address these arguments on their merits more fully above.

get" petitioner, that this threat was "severe[] enough" that petitioner "thought the decedent might kill him," and that he did not bring a gun with him to the nightclub on the night in question. Simply put, there is no indication in the record that an investigation into a diminished capacity defense was warranted, especially in light of the fact that petitioner's attorneys met with him on multiple occasions and engaged in hundreds of hours of work in petitioner's defense, including retaining a private investigator to support the defense.

Similarly, the record is devoid of any evidence that suggests petitioner received ineffective assistance of counsel due to a failure to investigate a theory of self-defense.[4] It is true, as petitioner notes, that "[w]here a defendant has asserted a plea of self-defense, evidence showing that the decedent had previously abused or threatened the life of the defendant is relevant evidence of the defendant's state of mind at the time deadly force was used." Syl. Pt. 3, in part, *State v. Harden*, 223 W. Va. 796, 679 S.E.2d 628 (2009). However, petitioner fails to acknowledge the following:

> In determining whether the circumstances formed a reasonable basis for the defendant to believe that he or she was at imminent risk of serious bodily injury or death at the hands of the decedent, the inquiry is two-fold. First, the defendant's belief must be subjectively reasonable, which is to say that the defendant actually believed, based upon all the circumstances perceived by him or her at the time deadly force was used, that such force was necessary to prevent death or serious bodily injury. Second, the defendant's belief must be objectively reasonable when considering all of the circumstances surrounding the defendant's use of deadly force, which is to say that another person, similarly situated, could have reasonably formed the same belief.

*Id*. In support of his subjective belief that deadly force was necessary, petitioner simply asserts that the victim stated he would "come get" petitioner after the altercation in the nightclub. Without any additional evidence or corroboration, petitioner asserts that this statement was "severe" enough that he believed the victim might kill him. Petitioner fails, however, to allege how his belief was objectively reasonable, especially considering the circumstances surrounding his use of deadly force. While it is true that the evidence on appeal is undisputed that petitioner and the victim engaged in a physical altercation inside the nightclub shortly before the shooting, petitioner ignores the overwhelming evidence regarding the actual shooting. By petitioner's own admission, following the physical altercation, he left the nightclub, obtained a firearm, and waited for the victim to exit the building. When the victim and other eyewitnesses exited the club, they saw petitioner "in the middle of the street coming from the library . . . with a small caliber handgun," at which point he shot the victim. Further, petitioner ignores his own admission that he did not see

---

[4]Again, we do not agree with petitioner's contention that the record establishes that counsel failed to adequately investigate a self-defense theory or otherwise discuss it with petitioner. As set forth above, petitioner's attorneys specifically requested a continuance of trial because they recognized that self-defense could be an applicable theory and that it would require additional time for investigation. Given that the record shows that counsel identified the possibility of asserting this theory, coupled with their extensive investigation and work on the matter, it is reasonable to conclude that the attorneys thoroughly investigated this issue. However, we nonetheless address petitioner's argument on the merits more fully above.

the victim with a weapon of any kind, nor does he allege that, had he not used deadly force, the victim would have inflicted serious bodily harm upon him. Taken together, the facts of this case do not support a finding that, objectively, petitioner's use of force under the circumstances was reasonable. Further, although "evidence that the decedent had abused or threatened the life of the defendant is nonetheless relevant and may negate or tend to negate a necessary element of the offense(s) charged, such as malice or intent," petitioner again fails to assert how the victim's purported threat to "come get" petitioner or evidence of their physical altercation could have in any way negated any evidence of an essential element of first-degree murder. *Id.* at 799, 679 S.E.2d at 631, syl. pt. 4, in part. In short, petitioner has simply failed to carry his burden of establishing that his attorneys should have investigated a theory of self-defense, given the facts of the case.

Based on the foregoing, we decline to find that petitioner's attorneys' representation was deficient because they may have failed to investigate either a diminished capacity defense or a theory of self-defense, or otherwise advise petitioner that he may potentially be able to advance these defenses. This is especially true when considering that "if it is reasonable in the circumstances not to conduct a particular investigation, [a] lawyer's failure to do so will not establish ineffective representation." *Lloyd*, 2018 WL 1319187, at \*7 (quoting *Earl v. Israel*, 765 F.2d 91, 93 (7th Cir. 1985), *cert. denied*, 474 U.S. 951 (1985)).

More importantly, petitioner is not entitled to relief because he has failed to satisfy the prejudice prong of the *Strickland* test. Petitioner's only attempt to address this element is his self-serving assertion that "[h]ad these [defenses] been discussed with [him], he would not have accepted the plea." This is simply insufficient to entitle him to relief. In order to satisfy the prejudice prong of *Strickland*, petitioner must demonstrate "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Syl. Pt. 6, in part, *State ex rel. Vernatter v. Warden, W. Va. Penitentiary*, 207 W. Va. 11, 528 S.E.2d 207 (1999). Beyond that, petitioner is required to "convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010). Most importantly, however, a "defendant's mere allegation that he would have insisted on trial but for his trial counsel's errors, although necessary, is ultimately insufficient to entitle him to relief. Rather, we look to the factual circumstances surrounding the plea to determine whether defendant would have proceeded to trial." *Lloyd*, 2018 WL 1319187, at \*8 (quoting *United States v. Clingman*, 288 F.3d 1183, 1186 (10th Cir. 2002)). "And where, as here, 'the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the "prejudice" inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial.'" *Id.* (quoting *Hill*, 474 U.S. at 59).

As outlined above, neither defense was likely to succeed. Further, if petitioner had proceeded to trial, petitioner would have faced the possibility of life imprisonment, without the possibility of parole. In fact, at sentencing, the trial judge indicated that "[b]ased on my experience here, over this 18 years of trying a lot of cases, I think it would be a reasonably close case as to whether the jury would give mercy or not give mercy." Given the uncertainty of whether petitioner would receive mercy at trial, coupled with the unlikely success of the defenses petitioner has identified, we cannot find that it would have been rational to reject the plea bargain. For these reasons, petitioner has failed to satisfy either element of the *Strickland* test and is entitled to no

relief.

In his second assignment of error, petitioner asserts that his sentence is disproportionate to the offense when considering his "youth and lack of a significant prior record." We find, however, that petitioner has failed to carry his burden of establishing that he is entitled to relief. This Court has held as follows:

> "In determining whether a given sentence violates the proportionality principle found in Article III, Section 5 of the West Virginia Constitution, consideration is given to the nature of the offense, the legislative purpose behind the punishment, a comparison of the punishment with what would be inflicted in other jurisdictions, and a comparison with other offenses within the same jurisdiction." Syl. pt. 5, *Wanstreet v. Bordenkircher*, 166 W.Va. 523, 276 S.E.2d 205 (1981).

Syl. Pt. 4, *State v. Shafer*, 237 W. Va. 616, 789 S.E.2d 153 (2015). Further,

> [t]he Court uses two tests for determining whether a sentence violates the proportionality requirement set forth in our Constitution. *State v. Mann*, 205 W.Va. 303, 314-15, 518 S.E.2d 60, 71-72 (1999). The first test is subjective and requires that the Court determine whether the sentence "shocks the conscience and offends fundamental notions of human dignity." Syl. pt. 5, in part, *State v. Cooper*, 172 W.Va. 266, 304 S.E.2d 851 (1983). If the Court decides that the sentence shocks the conscience, then the Court need not proceed to the second test. *Mann*, 205 W.Va. at 315, 518 S.E.2d at 72. In determining whether a sentence shocks the conscience, we consider all of the circumstances surrounding the offense, the information contained in the presentence investigation report, and findings made by the trial court. *State v. Phillips*, 199 W.Va. 507, 513, 485 S.E.2d 676, 682 (1997). However, if the sentence is not subjectively unconstitutional, then the Court must proceed to examine the sentence using an objective test. *Id.* The objective test requires that the Court consider (1) "the nature of the offense," (2) "the legislative purpose behind the punishment," (3) how the punishment compares "with what would be inflicted in other jurisdictions," and (4) how the punishment compares to the punishments of "other offenses within the same jurisdiction." Syl. pt. 5, in part, *Wanstreet*, 166 W.Va. 523, 276 S.E.2d 205.

*Id.* at 622, 789 S.E.2d at 159.

On appeal, petitioner provides no substantive argument in an attempt to address any of the factors outlined above. His entire argument consists of an assertion that the habeas court relied on factors identified by the trial court that he believes "suggest a violation of proportionality pursuant to *Cooper*." While he cites relevant authority about how to determine if a sentence is disproportionate, he simply fails to provide any analysis regarding the subjective or objective tests, including a failure to address the nature of the offense, the legislative purpose behind the punishment, or how his punishment compares to other jurisdictions or other offenses within this jurisdiction. This Court has long held that

"[a] skeletal 'argument,' really nothing more than an assertion, does not preserve a claim . . . . Judges are not like pigs, hunting for truffles buried in briefs." (Citation omitted). Moreover, as we held in Syllabus Point 2 of *WV Dept. of Health & Human Resources Employees Federal Credit Union v. Tennant*, 215 W.Va. 387, 599 S.E.2d 810 (2004), "'[a]n appellant must carry the burden of showing error in the judgment of which he complains. This Court will not reverse the judgment of a trial court unless error affirmatively appears from the record. Error will not be presumed, all presumptions being in favor of the correctness of the judgment.' Syllabus Point 5, *Morgan v. Price*, 151 W.Va. 158, 150 S.E.2d 897 (1966)."

*State ex rel. Hatcher v. McBride*, 221 W. Va. 760, 766, 656 S.E.2d 789, 795 (2007). Accordingly, we decline to find that petitioner is entitled to relief on appeal, given his failure to analyze the appropriate factors that would entitle him to relief, if established.

Finally, in his third assignment of error, petitioner asserts that he is entitled to habeas relief because his plea was not entered into knowingly, intelligently, and voluntarily. This assignment of error, however, is predicated entirely on his assertion that "trial counsel failed to adequately inform [him] of the potential legal impact of his intoxication" on his charge of first-degree murder "or the potential for a justification (self-defense) defense." Because petitioner asserts that "[i]t was trial counsel's duty to properly inform him of his legal defenses," he argues that the habeas court should have granted him relief in this regard. We disagree.

[O]n a direct appeal, as well as in a habeas corpus proceeding, before a guilty plea will be set aside based on the fact that the defendant was incompetently advised, it must be shown that (1) counsel did act incompetently; (2) the incompetency must relate to a matter which would have substantially affected the fact-finding process if the case had proceeded to trial; (3) the guilty plea must have been motivated by this error.

*State v. Sims*, 162 W. Va. 212, 219, 248 S.E.2d 834, 838-39 (1978). Having found that counsel's performance relating to petitioner's assertion of ineffective representation for failing to inform him of the defenses at issue was not deficient, and especially in light of our finding that these defenses were not viable at a potential trial, we cannot find that petitioner is entitled to relief in this regard.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** January 17, 2020

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison